**Richard T. BRIGHAM and Margaret H. Brigham**

v.

**UNITED STATES of America, Appellant.**

No. 75–1891.

United States Court of Appeals, Third Circuit.

Argued Feb. 5, 1976.

Decided June 30, 1976.

Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Jr., Bennet N. Hollander and Joseph M. McMannus, Attys., Tax Div., U. S. Dept. of Justice, Washington, D. C., for appellant; Robert E. J. Curran, U. S. Atty., Philadelphia, Pa., of counsel.

Donald M. McDonald, and Edward R. Sandell, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., Austin H. Peck, Jr., and McGee Grigsby, Latham & Watkins, Los Angeles, Cal., for appellees.

Before SEITZ, Chief Judge, and VAN DUSEN and WEIS, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

The Government appeals from a May 13, 1975, district court judgment denying its claim for an offset against a tax refund awarded to plaintiffs-taxpayers, Richard T. and Margaret H. Brigham, on their 1966 individual tax return.[1] The question presented concerns the taxation of the gain taxpayers recognized on the liquidation of a "controlled foreign corporation" in which they held stock. The principal issue is whether 26 U.S.C. § 1248(d)(2)[2] permitted taxpayers to exclude from the corporation's "earnings and profits" account a $210,586 gain the corporation would have had to recognize as a taxable gain on the sale of its excessively depreciated property if it had been a domestic corporation. 26 U.S.C. § 1245(a) and (d).[3] Resolution of this issue

---

1. Plaintiffs-taxpayers commenced this refund action on November 16, 1972. The Government conceded the validity of the ground on which taxpayers sought the refund but, in an amended answer, raised an offset defense. See Final Pretrial Order filed April 18, 1973, reproduced in defendant-appellant's appendix at 3a–9a. The only issue on this appeal is the validity of the Government's offset defense.

Jurisdiction is based on 28 U.S.C. § 1346(a)(1) and (c).

2. All statutory citations in this opinion refer to the Internal Revenue Code.

3. "§ 1245. Gain from dispositions of certain depreciable property

"(a) General rule.—

"(1) Ordinary income.—Except as otherwise provided in this section, if section 1245 property is disposed of during a taxable year beginning after December 31, 1962, the amount by which the lower of—

"(A) the recomputed basis of the property, or

"(B)(i) in the case of a sale, exchange, or involuntary conversion, the amount realized, or

."(ii) in the case of any other disposition, the fair market value of such property,

exceeds the adjusted basis of such property shall be treated as gain from the sale or exchange of property which is neither a capital asset nor property described in section 1231. Such gain shall be recognized notwithstanding any other provision of this subtitle.

. . . . .

will determine whether a certain portion of the gain taxpayers recognized on the final liquidation of the corporation was taxable as a capital gain, 26 U.S.C. § 331, or as a dividend includible in their gross income to the extent of their pro rata share of the $210,586 gain on which the corporation would have paid ordinary corporate income tax had it been a domestic corporation. 26 U.S.C. § 1248(a)–(b).[4] The district court concluded that § 1248(d)(2) permitted taxpayers to exclude the $210,586 from the corporation's earnings and profits and that, as a consequence, capital gain rates were applicable to taxpayers' pro rata share of this gain. See *Brigham v. United States,* 396 F.Supp. 823 (E.D.Pa.1975). We reverse and remand.

The facts and much of the applicable law have been stipulated. In 1966 taxpayers owned more than 10% of the voting stock of Numar, S.A., a corporation that was organized under the laws of Costa Rica and qualified as a "controlled foreign corporation." 26 U.S.C. § 957. In 1965 Numar adopted a plan of complete liquidation and sold its assets to United Fruit Company ("United"). Numar realized a net gain on this sale of $4,371,720. Within 12 months of the adoption of the plan, Numar distributed the proceeds of this sale, less assets retained to meet claims, to its United States shareholders, including taxpayers.

The parties agree that the gain taxpayers recognized on the final liquidating distribu-

tion was taxable as a dividend under the principles of § 1248(a)–(b), rather than as a capital gain, 26 U.S.C. § 331, to the extent of Numar's post-1962 accumulated earnings and profits attributable to taxpayers' Numar stock. See 26 U.S.C. § 1248(a)–(b). In determining the amount of the liquidating distribution that was taxable as a dividend under § 1248(a)–(b), taxpayers excluded from Numar's earnings and profits the entire amount of the $4,371,720 gain realized on the sale of assets to United. As authority for this exclusion, taxpayers relied on § 1248(d)(2), which authorizes the exclusion from earnings and profits of "any net gain" on the sale of assets by a "controlled foreign corporation" if § 337(a) "would apply if such foreign corporation were a domestic corporation." 26 U.S.C. § 1248(d)(2).

Under § 337(a) a domestic corporation normally pays no tax on any gain realized on the sale or exchange of its assets pursuant to a qualifying plan of complete liquidation. The Government concedes that § 337(a) would have applied to Numar if it had been a domestic corporation.

The difficulty in this case arises because § 337(a) would not have insulated from corporate taxation the entire amount of the $4,371,720 gain due to § 1245(a) and (d) (see note 3 above). Numar had taken excess depreciation on some of the assets it sold to United. Section 337(a) "notwithstanding," the depreciation recapture provision of the Code, 26 U.S.C. § 1245(a) and (d), would,

"(d) Application of section.—This section shall apply notwithstanding any other provision of this subtitle."

Sections 337(a), 1245 and 1248 are in Subtitle A. See Treas.Reg. § 1.1245–6(a)–(b).

4. Section 1248(a) provides:

"(a) General Rule.—If—

"(1) a United States person . . . receives a distribution from a foreign corporation which, under section 302 or 331, is treated as an exchange of stock, and

"(2) such person owns, within the meaning of section 958(a) . . . 10 percent or more of the total combined voting power of all classes of stock entitled to vote of such foreign corporation at any time during the 5-year period ending on the date of the sale or exchange when such foreign corporation

was a controlled foreign corporation (as defined in section 957), then the gain recognized on the sale or exchange of such stock shall be included in the gross income of such person as a dividend, to the extent of the earnings and profits of the foreign corporation attributable (under regulations prescribed by the Secretary or his delegate) to such stock which were accumulated in taxable years of such foreign corporation beginning after December 31, 1962, and during the period or periods the stock sold or exchanged was held by such person while such foreign corporation was a controlled foreign corporation."

Section 1248(b) establishes special rules for the taxation of dividends under § 1248(a). See pages 8–9 below.

therefore, have required a domestic corporation to pay ordinary corporate income tax on $210,586, the gain attributable to the excess depreciation. It is the Government's position that this $210,586 was improperly excluded from Numar's earnings and profits under § 1248(d)(2).

■ Before beginning our analysis of § 1248(d)(2), it is important to clarify what is not at issue on this appeal. First, we are not dealing with the question of whether Numar itself is liable for any tax under § 1245. As a foreign corporation Numar is not directly subject to United States taxation on foreign source income.[5] Nor are we concerned with whether § 337(a) or § 1245 in any sense "create[s] earnings and profits." Appellees' brief at 19–21 and 26–31. Section 1248(c)(1) establishes the general rule that "the earnings and profits of any foreign corporation for any taxable year shall be determined according to rules substantially similar to those applicable to domestic corporations under regulations prescribed by the Secretary or his delegate." The parties have stipulated that under this general rule the entire amount of the $4,371,720 gain, including the $210,586, was initially includible in Numar's earnings and profits.[6] The sole question presented here is whether § 1248(d)(2), an exception to the general rule, permitted the exclusion from Numar's earnings and profits of the $210,586 gain that would have been taxable to a domestic corporation "notwithstanding" the non-recognition provision of § 337(a). We turn to § 1248(d)(2).

Section 1248(d)(2) provides in pertinent part as follows:

"For the purposes of this section [1248], the following amounts shall be excluded, with respect to any United States person, from the earnings and profits of a foreign corporation:

.    .    .    .    .

"(2) Gain realized from the sale or exchange of property in pursuance of a plan of complete liquidation.—If a foreign corporation adopts a plan of complete liquidation . . . and if section 337(a) would apply if such foreign corporation were a domestic corporation, earnings and profits of the foreign corporation attributable (under regulations prescribed by the Secretary or his delegate) to any net gain from the sale or exchange of property."

The taxpayers' position is that the phrase "any net gain" refers to the entire amount of any gain "realized" in a sale of assets under a plan of complete liquidation, re-

---

**5.** The fact that § 1245 does not impose a direct tax on foreign corporations does not, in our view, answer the question of whether § 1245 has an effect on the computation of such a corporation's earnings and profits for purposes of determining the tax liability of United States shareholders who are subject to domestic taxation.

**6.** Taxpayers assert that § 1245 merely requires recognition of income for tax purposes and has no effect on earnings and profits. Section 1245 is thus irrelevant, the argument goes, for purposes of computing earnings and profits under § 1248. Taxpayers also contend that earnings which escape taxation under § 337(a) are not includible in a corporation's earnings and profits. Therefore, taxpayers conclude, even if § 1245 does "create earnings and profits," such § 1245 earnings and profits are the only earnings and profits § 1248(d)(2) could possibly have been intended to exclude. Both of these arguments ignore the stipulation referred to in the text, which provides (¶ 10 at 5a):

"10. In 1965 Numar, S.A., a corporation organized under the laws of Costa Rica and a controlled foreign corporation under Section 957 of the Code, adopted a plan of complete liquidation and sold its assets to United Fruit Company. From this sale Numar realized a gain of $4,371,720, all of which was includible in its earnings and profits for purposes of Section 1248(c), of which $210,586 would have been recognized gain under Section 1245 if Numar had been a domestic corporation. Of the gain realized by Numar as aforesaid plaintiffs' share (they being the owners of 13.48% of the issued and outstanding shares) was $589,308, of which $28,386 would have been recognized gain to Numar under Section 1245 if Numar had been a domestic corporation."

See also Treas.Reg. § 1.1248–2(d)(1); Treas. Reg. § 1.964–1. We believe § 1248(d)(2) makes the tax consequences of a gain relevant to the computation of earnings and profits.

gardless of the fact that a portion of the gain, "notwithstanding" § 337(a), would have been taxable to a domestic corporation under § 1245. The Government, on the other hand, asserts that the § 1248(d)(2) exclusion applies only to gains that would have been "tax free" to the corporation under § 337(a). See Treas.Reg. § 1.1248–2(d)(ii).[7] Thus, they argue, § 1248(d)(2) does not operate to exclude from earnings and profits the $210,586 gain that would have been taxable under § 1245 if Numar had been a domestic corporation.

■■■ The taxpayers' interpretation of § 1248(d)(2) concededly derives some support from the literal language of the statute. However, after considering the purposes of § 1248 and § 1248(d)(2), their place in the overall statutory scheme, and their legislative history,[8] we conclude that the Government is correct in its contention that § 1248(d)(2) does not operate to exclude from earnings and profits the $210,586 gain that would have been taxable to Numar under § 1245(a), notwithstanding § 337(a).

First, the taxpayers' construction of § 1248(d)(2) would lead to the type of inequity we believe § 1248 as a whole was designed to correct. Prior to the enactment of § 1248, United States shareholders of foreign corporations were able to accumulate earnings in the corporation and then sell their shares at a price that reflected in part these accumulated earnings. Under § 331 of the Code, the gain was taxable to the shareholders at capital gain rates. The inequity inhered in the fact that the foreign corporations were not subject to United States corporate tax. Thus, while those who owned stock in domestic corporations were effectively taxed twice on corporate earnings (ordinary corporate tax at the corporate level and capital gains at the shareholder level), American shareholders of foreign corporations were able to pay only personal capital gains taxes on those earnings.

Concerned with the use of such foreign "tax haven" devices, Congress designed § 1248 to prevent certain United States shareholders of "foreign controlled corporation[s]" from being in a better net position than United States shareholders of domestic corporations.[9] As we have already noted, § 1248(a) provides that on the sale or exchange of the stock of a "controlled foreign corporation," certain United States shareholders must treat the gain they recognize as a dividend to the extent of post-1962 accumulated earnings and profits. Under § 1248(b) that dividend is taxed in a manner that takes account of the difference in the amount of ordinary corporate income tax paid indirectly by the United States shareholders of domestic corporations and

7. Treas.Reg. § 1.1248–2(d)(ii) provides:

"If a foreign corporation adopts a plan of complete liquidation in a taxable year of the corporation beginning after December 31, 1962, and if because of the application of section 337(a) gain or loss would not be recognized by the corporation from the sale or exchange of property if the corporation were a domestic corporation, then the earnings and profits of the corporation accumulated for the taxable year (computed without any reduction for distributions) shall be determined without regard to the amount of such gain or loss. See section 1248(d)(2)."

8. The Supreme Court has indicated that a court may use available aids to construction no matter how clear the statute may appear at first inspection. *Cass v. United States,* 417 U.S. 72, 78–79, 94 S.Ct. 2167, 40 L.Ed.2d 668 (1974); see *United States v. Duncan,* 527 F.2d 1278, 1280 (3d Cir. 1975).

9. See H.Rep.No.1447, 87th Cong., 2d Sess., reprinted in 1962–3 Cum.Bull. at pages 461–62, 480–82; S.Rep.No.1881, 87th Cong., 2d Sess., reprinted in 1962–3 Cum.Bull. at pages 708, 813–15. The Senate Report states at page 813 of 1962–3 Cum.Bull.:

"Under existing law, through an ordinary taxable liquidation or sale or exchange, it is possible to bring earnings accumulated by a foreign corporation back to this country merely by paying a capital gains tax on such earnings included in the gain. . . .

"The bill has as one of its objectives in the foreign income area the imposition of the full U.S. tax when income earned abroad is repatriated. Full U.S. taxation will occur in the case of the ordinary taxable liquidations or sales or exchanges only if the earnings and profits are in effect taxed as dividends (to the extent of any gain) at the time the funds are brought back to the United States. This objective is accomplished by this section of the bill."

the foreign corporate income taxes paid by foreign corporations.[10]

If the $210,586 gain that would have been taxable to a domestic corporation is excludable from Numar's earnings and profits, as taxpayers contend, the purpose of § 1248 would be undermined. By avoiding dividend treatment under § 1248(a) and § 1248(b), taxpayers would escape paying their pro rata share of the corporate tax they would have borne indirectly had Numar been a domestic corporation.

Second, the Government's interpretation of § 1248(d)(2) is consistent with the legislative history of that particular provision. In our view, § 1248(d)(2) was added by the Senate to the bill that had passed the House of Representatives in order to prevent stockholders in liquidating foreign corporations from being in a worse position than shareholders of domestic corporations liquidating under § 337(a).[11] As we have already noted, when a domestic corporation liquidates in accordance with § 337, the gain to the corporation from the sale or exchange of its assets escapes United States corporate taxation. As a result, the only tax burden on the United States shareholders is a personal capital gains tax. We believe § 1248(d)(2) was designed to accomplish the same result for shareholders of foreign corporations that liquidated under a plan that would have qualified under § 337.

Taxpayers' construction of § 1248(d)(2) misconceives the narrow purpose of the provision. The theory behind § 1248(d)(2) is inapplicable to gains on which a liquidating corporation would have been taxed despite § 337(a). *Cf. Whitlock v. Commissioner,*

494 F.2d 1297 (10th Cir.), *cert. denied,* 419 U.S. 839, 95 S.Ct. 69, 42 L.Ed.2d 67 (1974).

Finally, our view that § 1248(d)(2) excludes from a foreign corporation's earnings and profits only those gains that would have been tax free under § 337(a) is consistent with the manner in which the provision is described in the Senate Report accompanying the Revenue Act of 1962.[12] In that Report, the Committee on Finance stated:

"The earnings and profits for purposes of this section do not include any amount attributable to gains on sales made in the course of a liquidation *if these sales would have been treated as tax-free sales on liquidation (under sec. 337(a))* had the foreign corporation been a domestic corporation." (Emphasis added.)[13]

S.Rep.No.1881, *supra* note 9 at page 815 of 1962–3 Cum.Bull. We note, in addition, that our decision is in harmony with the result reached in *Pielemeier v. United States,* 74–2 U.S.Tax Cas. ¶ 9,599 (C.D.Calif. 1974), appeal pending, Nos. 74–3150/51, 9th Cir., an identical case arising out of the liquidation of Numar.

For the foregoing reasons, the judgment of the district court will be reversed and the case remanded for further proceedings consistent with this opinion.[14]

---

10. See 26 U.S.C. § 1248(b); Treas.Reg. § 1.1248–4. *See also* S.Rep.No.1881, *supra* note 9, at pages 1003–13 of 1962–3 Cum.Bull.

11. Conf.Rep.No.2508, 87th Cong., 2d Sess., reprinted in 1962–3 Cum.Bull. at pages 1167–68; S.Rep.No.1881, *supra* note 9, at pages 813–14 and 1009–10 of 1962–3 Cum.Bull.

12. Section 1248 was added to the Internal Revenue Code by the Revenue Act of 1962. P.L. 87–834, 76 Stat. 960.

13. Taxpayers assert that this language does not support the Government's position "because it is undisputed that the sales in question would

have been 'tax free' in their entirety under section 337(a). It is not section 337(a) which gives rise to a tax for a domestic corporation but section 1245." Appellees' brief at 13. We reject this semantic argument in light of our understanding of the purpose of § 1248.

14. See Final Pretrial Order, *supra* note 1, ¶ 17(7a). At oral argument, taxpayers raised certain factual issues concerning the computation of taxes which should be presented to the district court in the first instance.