Lois J. JORDAN, Plaintiff,

v.

KENT RECOVERY SERVICES, INC. and Lee Murray, Defendants and Third Party Plaintiffs,

v.

MERIDIAN BANK CORPORATION, Third Party Defendant.

Civ. A. No. 89–11–JJF.

United States District Court, D. Delaware.

Feb. 28, 1990.

---

Barbara James of UAW Legal Services Plan, Newark, Del., for plaintiff.

Mark F. Dunkle of Prickett, Jones, Elliott, Kristol & Schnee, Dover, Del., for defendants and third party plaintiffs.

Roger A. Akin of Sawyer & Akin, Wilmington, Del., for third party defendant.

## OPINION

FARNAN, District Judge.

Lois J. Jordan filed this suit on January 13, 1989 against Kent Recovery Services, Inc. ("Kent Recovery") and Lee Murray ("Murray"), Kent Recovery's president and owner of all of its stock, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C.A. §§ 1692–1692o (West 1982 & Supp.1989) (Docket Item ("D.I.") 1). Thereafter, on May 9, 1989, Kent Recovery and Murray (the "defendants") brought a third party complaint against Meridian Bank Corporation ("Meridian"), claiming that Meridian should indemnify the defendants should the defendants be held liable to Jordan (D.I. 13). The defendants then filed a motion for summary judgment on September 18, 1989 and, in their opening brief filed in support of the motion, asserted that the sections of the FDCPA allegedly violated by the defendants do not apply to Kent Recovery (D.I. 24, 25). Jordan filed an answering brief and the defendants followed with a reply brief (D.I. 26, 27). Oral argument was held on December 5, 1989. For the reasons stated below, the Court concludes that summary judgment will be granted to the defendants.

## I. FACTS

In early 1987, Jordan purchased a used 1983 Oldsmobile Calais from Freedom Ford in Wilmington, Delaware. Jordan financed the purchase of the car by a loan offered through Freedom Ford, a loan which Freedom Ford later assigned to Meridian. Jordan posted the car as collateral for the loan, thereby giving Meridian a security interest in the car. Apparently, with Jordan's permission, William Smith, the father of her child, took possession of the car and made some of the initial monthly payments on the loan. By December of 1987, however, the payments were three months delinquent. As a consequence, Meridian requested that Kent Recovery "[r]eposses [the car] on sight if same can be effected without breach of the peace" and "[d]eliver [it] to Freedom Ford (Wilmington)." Appendix to Defendants' Opening Brief In Support of Their Motion For Summary Judgment ("Appendix") at A–1.

Kent Recovery, responding to Meridian's request, sent Thomas Aponte, an agent of Kent Recovery, to Jordan's home in Wilmington, Delaware in an attempt to repossess the car. At Aponte's first visit to Jordan's home in February of 1988, Jordan proved furtive. As Jordan testified in her deposition, she knowingly misrepresented the car's whereabouts:

Q. Go ahead and tell me what the conversation was that you had with them.
A. Well, as far as I can remember, they was telling me that they come to possess the car. And they asked me where was it, and I told them it wasn't there. And they asked me where it was, and I told them I lent to a friend and that they had went away for the week, and I couldn't get it back until then.

\* \* \* \* \* \*

Q. Where was the car at the time?
A. William Smith had it.
Q. And he had had it a lot longer than one week?
A. He had had it all the time since I had purchased the car.
Q. And so when you told these people from Kent Recovery that you had lent the car to a friend for one week, that really wasn't true, was it?
A. No.

Appendix at A–3 to A–5.

As might be expected, Aponte could not locate the car and made a second visit to Jordan's home about two weeks later. Jordan testified that she again lied about the car's location:

A. [Aponte] came back, and he knocked on the door.
Q. Okay. Did you answer the door?
A. Yes. And he asked me was the car there. And I said no. And then he went on to say did I know where it was. And at that time I just told him no, I didn't know where it was.
Q. What else did he say?
A. I don't remember what else he said.
Q. All right. Did you tell him at that time that Mr. Smith had the car?
A. No.

Appendix at A–6. Aponte made a third visit, whereupon Jordan told him that Smith had possession of the car. Nevertheless, as her deposition testimony reveals, she neglected to inform Aponte that Smith was in her home at the time of Aponte's visit:

Q. Tell me, if you can remember, everything that you told the man from Kent Recovery on this third visit. You said you told him that Mr. Smith had the car.
A. Right.
Q. Did you tell him that Mr. Smith lived in Maryland?
A. I could have. I don't remember. I could have told him that.
Q. You didn't tell him that Mr. Smith was in the house?
A. No.
Q. And at the time the man from Kent Recovery was at the door, you knew Mr. Smith was in the house?
A. Yes.

Appendix at A–11 to A–12.

Aponte, despite the obfuscation, was persistent and returned to Jordan's home a fourth time. At that visit Jordan informed Aponte that Smith was employed by a company in Maryland. Aponte went to that

company but was told that Smith did not work there. Aponte thereafter made a fifth and final visit to Jordan's home in June of 1988 but was unsuccessful in locating the car. Consequently, the car was never repossessed by Kent Recovery.

Thereafter, on June 13, 1988, Murray, the president of Kent Recovery, sent Jordan a letter informing her that she may have violated a Delaware state law prohibiting the defrauding of creditors and that he might recommend to Meridian that legal action be pursued against her. The letter read in pertinent part:

> It appears to us that you are in violation of Delaware Code Title 11 Section 891 covering defrauding secured creditors. We have enclosed copy of this document for your information.
>
> We will allow you ten days upon receipt of this letter for you to discuss this matter with your attorney before recommending the bank seek relief through the court of appropriate jurisdiction.

Appendix at A–23. Neither Meridian nor Kent Recovery pursued legal action against Jordan under Del.Code Ann. tit. 11, § 891 (1987), a statute making defrauding secured creditors a class A misdemeanor. Still, Jordan became upset by the threat of legal action and showed the letter to her attorney.

Jordan, through her attorney, responded to Murray on July 29, 1988, demanding that the repossession of the car, termed debt collection by the letter, be consistent with the FDCPA, which the letter implied had been violated by Kent Recovery's failure to supply the necessary validation of her debt:

> Pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq.*, you are hereby directed to:
>
> 1. Cease all further communications with my client, and
>
> 2. Provide the undersigned with verification of the purported debt.
>
> Until advised otherwise you should mark this matter as "disputed". I anticipate your cooperation herein.
>
> It is my preliminary opinion that you failed to send my client a "validation notice" after your initial contact(s) with her. Please send me copies of all written correspondence you have directed to my client.

Appendix at A–25. Jordan's attorney wrote a follow-up letter to Murray on August 17, 1988, again demanding a validation notice. Kent Recovery never sent the requested document.

Eventually, Jordan and Smith met with a representative of Meridian. At the meeting, Smith agreed to make the payments on the car loan, a promise on which he reneged after making three payments. Jordan thereafter repaid the loan. Jordan, however, remained dissatisfied with Kent Recovery and Murray. In her complaint, Jordan alleges:

> 1) that the defendants' failure to provide notification of the debt violated 15 U.S.C. § 1692g(a);
>
> 2) that the defendants' failure to disclose that they were collecting a debt violated 15 U.S.C. § 1692e(11);
>
> 3) that the defendants' allegedly false suggestion that Jordan may have transgressed a criminal statute violated 15 U.S.C. § 1692e(7); and
>
> 4) that the defendants' failure to provide validation of the debt to Jordan after her attorney requested it violated 15 U.S.C. § 1692g(b).

Complaint ¶ 12 (D.I. 1).

As noted, the defendants argue that the sections relied upon by Jordan do not apply to Kent Recovery. The defendants claim that Kent Recovery is a business engaged only in repossession of property and assert that the FDCPA does not circumscribe the conduct of repossession agencies, except in one section of the statute which both parties agree is inapplicable in this case. *See* 15 U.S.C.A. § 1692f(6) (West 1982). With briefing complete and with oral argument having been held, the defendants' motion for summary judgment is ready for a decision.

## II. DISCUSSION

### A. *Summary Judgment Standard*

Defendants' summary judgment motion poses two questions:

1) whether repossession agencies fall outside the ambit of the FDCPA for the purposes of the FDCPA sections relied upon by the plaintiff; and

2) if so, whether Kent Recovery qualifies as a repossession agency or whether it should be considered a "debt collector" and therefore covered by the FDCPA's prohibitions.

Summary judgment may be granted on these questions if there is no dispute between the parties as to genuine issues of material fact and if the defendants are entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–52, 106 S.Ct. 2505, 2509–12, 91 L.Ed.2d 202 (1986). The defendants and the plaintiff agree that the facts in this case are not in dispute. The parties also agree that, in order to answer the two questions presented by the motion, the Court must engage in statutory construction of the FDCPA.

■ As the United States Court of Appeals for the Third Circuit has noted, "[s]tatutory construction is a question of law ... and such questions ... are 'peculiarly appropriate for independent judicial assessment.' " *Dunat v. Hurney*, 297 F.2d 744, 746 (3d Cir.1961) (citations omitted) (quoting *O'Leary v. Brown–Pacific–Maxon, Inc.*, 340 U.S. 504, 508, 71 S.Ct. 470, 472, 95 L.Ed. 483 (1951)). Accordingly, statutory construction is a proper subject for summary judgment. *See generally Americans Disabled for Accessible Public Transportation v. Skinner*, 881 F.2d 1184, 1191 n. 6 (3d Cir.1989); *Drayton v. United States*, 801 F.2d 117, 123 (3d Cir.1986), *cert. denied*, 481 U.S. 1037, 107 S.Ct. 1972, 95 L.Ed.2d 813 (1987). The Court therefore will consider the two questions presented by the defendants' motion *seriatim.*

B. *Are Repossession Agencies Outside the Ambit of The Fair Debt Collections Practices Act?*

"The starting point for interpreting a statute must be the language of the statute itself." *United States v. Bey*, 736 F.2d 891, 893 (3d Cir.1984). The Court therefore will first examine the plain meaning of the FDCPA in order to discern whether the FDCPA covers repossession agencies. In examining the plain meaning of the statute, the Court will apply principles of statutory construction because "a court may use available aids to construction no matter how clear the statute may appear at first inspection." *Brigham v. United States*, 539 F.2d 1312, 1316 n. 8 (3d Cir.1976). Second, the Court will analyze the FDCPA's legislative history because "courts no longer exclude evidence of legislature's intent on the ground that the meaning of the words of a statute is plain." *United States v. Standefer*, 610 F.2d 1076, 1084 (3d Cir.1979), *aff'd*, 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980). Third, the Court will examine other indicia of the statute's meaning, such as the interpretation given the FDCPA by courts and by the Federal Trade Commission ("FTC").

■ The FDCPA regulates the actions which a "debt collector" is permitted to take in collecting a debt. The FDCPA provides that the term "debt collector" means:

any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C.A. § 1692a(6) (West Supp.1989). The statute places limits on the term "debt collector" by providing that "[t]he term does not include" and thereafter listing six classes of debt collectors not covered by the FDCPA. *Id.* Repossession agencies are not included among the six excluded classes.

Nevertheless, the FDCPA refers to those who enforce security interests, such as repossession agencies, in the same section of the statute which defines "debt collector".

For the purpose of section 1692f(6) of this title, ["debt collector"] also includes any person who uses any instrumentality of interstate commerce or the mails in

any business the principal purpose of which is the enforcement of security interests.

§ 1692a(6). The defendants argue that the plain meaning of the statute indicates that the FDCPA includes an enforcer of a security interest for only one section of the FDCPA, § 1692f(6). Jordan contests this interpretation by arguing that this section merely adds an enforcer of a security interest to the FDCPA's coverage. She argues that the failure of Congress, both in the statute and the legislative history, to exclude repossession agencies as a class, such as Congress did for the six excluded classes of debt collectors, implies repossession agencies are included within the ambit of the statute for all purposes.

The Court finds Jordan's argument unpersuasive. It is the Court's "duty, under established principles of statutory construction, to give effect, if possible, to every clause and word of a statute." *Bell v. United States*, 754 F.2d 490, 498–499 (3d Cir.1985). Section 1692a(6) indicates that the term "debt collector" *also* includes an enforcer of a security interest for purposes of § 1692f(6). Such a purposeful inclusion for one section of the FDCPA implies that the term "debt collector" does not include an enforcer of a security interest for any other section of the FDCPA. " '[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.' " *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir.1972)); *see also Marshall v. Western Union Tel. Co.*, 621 F.2d 1246, 1251 (3d Cir.1980) (stating that "where Congress ... has carefully employed a term in one place and excluded it in another, it should not be implied where excluded"). It thus appears that Congress intended an enforcer of a security interest, such as a repossession agency, to fall outside the ambit of the FDCPA except for the provisions of § 1692f(6).

Not surprisingly, § 1692f(6), in conjunction with the FDCPA's legislative history, provides the key to understanding the reason Congress drew a distinction between a debt collector and an enforcer of a security interest. Section 1692f(6) states that the following conduct is prohibited:

Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—

(a) there is no present right to possession of the property claimed as collateral through an enforceable security interest;

(b) there is no present intention to take possession of the property; or

(c) the property is exempted by law from such dispossession or disablement.

15 U.S.C.A. § 1692f(6) (West 1982). Congress thus sought to proscribe the conduct of repossession agencies which have "no present right to the possession of the property claimed". § 1692f(6)(A). Conversely, Congress apparently sought to leave unregulated those who enforce security interests when a "present right" to the collateral exists, provided that § 1692f(6)(B) or (C) are not violated.

An examination of the FDCPA's legislative history reveals that a sound basis exists for regulating a debt collector while leaving unregulated a repossession agency which enforces a "present right" to a security interest. The Senate Report of the Committee on Banking, Housing and Urban Affairs ("Senate Report" or "Report") states, in describing the purpose of the FDCPA, that:

[T]he vast majority of consumers who obtain credit fully intend to repay their debts. When default occurs, it is nearly always due to an unforseen event such as unemployment, overextension, serious illness, or marital difficulties or divorce.

S.Rep. No. 95–382, 95th Cong., 1st Sess. 3, *reprinted in* 1977 U.S.Code Cong. & Admin.News 1695, 1697. The Report further provides that "only 4 percent of all defaulting debtors fit the description of 'deadbeat.' " *Id.* Also, the Report uses the term "debt collector" interchangeably with

"collection agencies," a term referring to those firms engaged in the collection of money. *Id.* at 2, *reprinted in* 1977 U.S. Code Cong. & Admin.News at 1696. The legislative history of the FDCPA thus indicates that the FDCPA was enacted in order to prevent the "suffering and anguish" which occur when a debt collector attempts to collect money which the debtor, through no fault of his own, does not have. *Id.*

In contrast to a debt collector, an enforcer of a security interest with a "present right" to a piece of secured property attempts to retrieve something which another person possesses but which the holder of the security interest still owns. Unlike the debtor who lacks the money sought, the possessor of secured property still has control of the property. Any failure to return the property to the rightful owner occurs not through misfortune but through a deliberate decision by the present possessor to avoid returning the property. Accordingly, the evil sought to be regulated by the FDCPA, *i.e.,* harassing attempts to collect money which the debtor does not have due to misfortune, is not implicated by the actions of an enforcer of a security interest with a "present right" to the secured property. Thus the legislative history confirms that Congress intended an enforcer of a security interest, such as a repossession agency, to fall outside the ambit of the FDCPA for all purposes except for the prohibitions described in § 1692f(6). *See Schramm v. Department of Health & Human Services,* 682 F.2d 85, 91 (3d Cir.1982) (when Congress "in plain language has expressed its intention, and the legislative history does not demonstrate a contrary purpose, we are bound to follow the statutory provisions as written").

An interpretation given the statute by the FTC, the administrative agency empowered by Congress to enforce the FDCPA, supports the above conclusion. In 1988, the FTC issued a "Commentary on the Fair Debt Collection Practices Act" ("Commentary"), which is designed to provide a "comprehensive vehicle for promoting staff opinions concerning the FDCPA." Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collec-

tion Practices Act, 53 Fed.Reg. 50097 (1988) (published December 13, 1988). The Commentary provides:

> Because the FDCPA's definition of "debt collection" includes parties whose principal business is enforcing security interests only for section 808(6) [§ 1692f(6)] purposes, such parties (if they do not otherwise fall within the definition) are subject only to this provision and not to the rest of the FDCPA.

*Id.* at 50108. Although its "precedential value" is "limited by the restrictive interpretative power given to [the FTC] under the FDCPA", the Commentary lends "some weight" to the conclusion that an enforcer of a security interest falls within the ambit of the FDCPA only for purposes of § 1692f(6). *Staub v. Harris,* 626 F.2d 275, 279 (3d Cir.1980).

Finally, the only case found by Court or the parties which extensively addresses the applicability of the FDCPA to repossession agencies supports the Court's interpretation of the FDCPA. *Colton v. Ford Motor Credit Co.,* No. 3916, slip op., 1986 WL 8538 (Ohio Ct.App. July 30, 1986) (Lexis, States library, Ohio file) (reproduced in defendants' Appendix at A–27); *see also In re Koresko,* 91 B.R. 689, 692, 694 n. 2 (Bankr.E.D.Pa.1988) (concludes that there is no evidence that FDCPA applies to repossession agency in the business of repossession of automobiles); *Meredith v. Pathfinders Detective and Recovery, Inc.,* C/A No. 82–2482–3, slip op. (D.S.C. November 9, 1983) (LEXIS, Genfed library, Dist file) (plaintiff concedes he can sue repossessor of his car only under one section of FDCPA); *Kohler v. Ford Motor Credit Co.,* 112 Misc.2d 480, 447 N.Y.S.2d 215, 217 (N.Y.Sup.Ct.1982) (court concludes that FDCPA has no application where repossessor is being sued for repossession of plaintiff's car), *modified on other grounds,* 93 A.D.2d 205, 462 N.Y.S.2d 297, 298 n. 1 (N.Y.App.Div.1983).

In *Colton,* the Ohio Court of Appeals upheld the grant of a summary judgment when it reasoned that the FDCPA "defines repossessors as debt collectors only for a single limited purpose." Appendix at A–

31. After an analysis of the statute, the court concluded that, "[t]he Act's express inclusion of repossessors for this purpose alone reveals the legislative intent that repossessors are exempt for all other purposes." *Id.* In this case, the Court, after engaging in statutory construction and examining the legislative history and FTC's interpretation, concludes similarly that the FDCPA does not restrict the conduct of repossession agencies, except in § 1692f(6). Consequently, this suit must be dismissed if Kent Recovery qualifies as a repossession agency.

## C. *Is Kent Recovery a Repossession Agency?*

Jordan contends that Kent Recovery is not a repossession agency but rather a collection agency engaged in the collection of money. In support of this position she offers two arguments. First, Jordan contends that repossession agencies such as Kent Recovery are engaged in the indirect collection of a debt. As an example of Kent Recovery's indirect collection of debt, Jordan contends that defendants' actions indirectly caused her friend, Smith, to again make Jordan's payments on the loan for her car. Second, Jordan contends that Kent Recovery is a collection agency because Murray, its president, indicated in his deposition that he once did "odds and ends collection work". Appendix at A–37. The Court finds neither argument persuasive.

■ Jordan's argument concerning the indirect collection of a debt has two weaknesses. First, Jordan's argument assumes, but does not prove, that repossession of secured property is synonymous with collection of a "debt" under the FDCPA. The FDCPA defines "debt" to be any "obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purchases...." 15 U.S.C.A. § 1692a(5) (West 1982). The undisputed evidence in this case clearly establishes that Kent Recovery was seeking the recovery of Jordan's car, and was not seeking the recovery of the debt itself, which is the "obligation of a consumer to pay money". § 1692a(5). Accordingly, the Court concludes that Kent Recovery was not engaged in the indirect collection of a "debt" when it attempted to repossess Jordan's car.

Second, Jordan's argument relies on a loose interpretation of the term "debt collector". If Jordan were correct, there would be no need for Congress to have noted that for the purposes of § 1692f(6) the term "debt collector" *also* includes an enforcer of a security interest. Under Jordan's argument, an enforcer of a security interest would already fall within the definition of a debt collector. The Court concludes that Jordan's argument, if accepted, would eradicate the distinction provided by Congress in the statute between an enforcer of a security interest and a debt collector. Such a conclusion is consistent with the legislative history, which reveals that Congress did not intend to leave the term "debt collector" open to elastic interpretations.

The Senate Report states that Congress specifically left certain prohibited practices of the FDCPA "in general terms," thereby enabling "courts, where appropriate, to proscribe other improper conduct which is not specifically addressed." S.Rep. No. 95–382 at 4, *reprinted in* 1977 U.S.Code Cong. & Admin.News at 1698. Congress, however, put specific limitations on the definition of "debt collector" in § 1692a(6), implying that Congress knew the prohibitions of the FDCPA did not reach "all who might be in a position to engage in the egregious practices with respect to collection of a debt." *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1168 (3d Cir.1987). Furthermore, the "numerous exceptions to the definition of 'debt collector'" implies that Congress knew the difference between the terms it employed and that Congress employed the difference consciously. *Id.* Since Congress purposively drew a distinction between a debt collector and an enforcer of a security interest, the Court concludes that to accept Jordan's construction would elevate creativity over the language carefully chosen by Congress and therefore must be rejected.

Jordan's second argument contends that Murray's admission regarding his past performance of "odds and ends collection work" places Kent Recovery within the ambit of the FDCPA. However, the FDCPA only reaches those who "regularly collect debts for others" and "exclude[s] a person who collects a debt for another in an isolated instance...." S.Rep. No. 95–382 at 3, *reprinted in* 1977 U.S.Code Cong. & Admin.News at 1697. So, despite Murray's limited assertion regarding his past activities, there is no evidence in the record submitted to the Court which indicates that Kent Recovery or Murray were involved in the regular collection of debt during the relevant time period here. Thus the Court concludes that Kent Recovery is a repossession agency within the meaning of the FDCPA, not a debt collector.

### III. CONCLUSION

In sum, for the reasons stated above, the Court concludes:

1) that an enforcer of a security interest, such as a repossession agency, falls outside the ambit of the FDCPA for all purposes, except for the purposes of § 1692f(6); and

2) that Kent Recovery is a repossession agency within the meaning of the FDCPA.

Accordingly, the Court will grant summary judgment to the defendants. An Order consistent with this Opinion will be entered.