*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0362P (6th Cir.)
File Name: 03a0362p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

DUANE MONTGOMERY,
　　　　*Plaintiff-Appellant,*

　　　　*v.*

HUNTINGTON BANK and
SILVER SHADOW RECOVERY,
INC.,

　　　　*Defendants-Appellees.*

No. 01-1283

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 00-74323—Anna Diggs Taylor, District Judge.

Submitted: August 8, 2003

Decided and Filed: October 9, 2003

Before: BOGGS, Chief Circuit Judge; SILER, Circuit
Judge; RICE, Chief District Judge.[*]

---

[*]The Honorable Walter Herbert Rice, Chief United States District
Judge for the Southern District of Ohio, sitting by designation.

---

## COUNSEL

**ON BRIEF:** Daniel E. Best, WELTMAN, WEINBERG &
REIS, Troy, Michigan, Donald R. Dillon, Jr., MOFFETT &
DILLON, Birmingham, Michigan, for Appellees. Duane
Montgomery, Livonia, Michigan, pro se.

---

## OPINION

---

SILER, Circuit Judge. Plaintiff Duane Montgomery,
proceeding *pro se*, appeals the district court's judgment
dismissing his claims against Huntington Bank and Silver
Shadow Recovery, Inc. ("Silver Shadow"), filed under the
Fair Debt Collection Practices Act (FDCPA), 15 U.S.C.
§ 1692 *et seq*. He argues that the district court erred in
finding that he was not a party in interest with respect to all
his claims, and that Huntington Bank and Silver Shadow
(collectively, the "Defendants") were not "debt collectors," as
that term is defined in the FDCPA. We **AFFIRM**.

### I. BACKGROUND

In 1998, Montgomery's mother, Helen J. Smith, financed
the purchase of a 1998 BMW by entering into a personal loan
agreement with Huntington Bank. As collateral for the loan,
Huntington Bank took a security interest in the car. As
Montgomery has admitted in his complaint, the BMW in
question was "owned by Helen Smith." Approximately one
year later, Smith allegedly suffered an injury and was
apparently unable to work. Despite Montgomery's repeated
contention that his mother was covered by credit disability
insurance that she had purchased as part of the personal loan
agreement to protect her in the event of a disability,
Huntington Bank sought to take possession of the BMW.

Thus, Huntington Bank retained Silver Shadow to repossess the vehicle pursuant to the terms of the loan agreement.

In 2000, while Montgomery was away from his home, two employees of Silver Shadow repossessed Smith's vehicle, which was parked in Montgomery's garage. Upon returning home, Montgomery discovered his mother's BMW was missing and immediately filed a police report with the West Bloomfield Township Police Department. The police report, which was attached to the complaint, stated that Montgomery had borrowed his mother's BMW in order to transport some personal items.[1] The complaint averred that the vehicle removed from his home was in fact a "borrowed BMW." In the process of repossessing the car, Montgomery asserts that Huntington Bank and Silver Shadow violated numerous Michigan laws. For instance, he insists that in order to repossess the car, Silver Shadow's employees opened his locked garage door without permission, and thereby committed an unlawful breaking and entering.[2] He also contends that Silver Shadow damaged his driveway, two of his cars that were parked near the BMW, and various other personal effects, including a laptop computer and a digital camera; these latter items were also allegedly confiscated and ultimately returned to Montgomery by Silver Shadow for a small fee. Silver Shadow, however, would not return the BMW to Montgomery, who offered to pay any outstanding towing and storage fees.

Montgomery sued the Defendants in Michigan state court, alleging various violations of state law. *See Montgomery v. Huntington Bank*, 2002 WL 31296642 (Mich. Ct. App. 2002)

---

[1] In a document submitted to the district court, Montgomery stated instead that he "picked up the 1998 BMW from his mother's home for the purpose of delivering the 1998 BMW to the dealership for scheduled maintenance on the following Monday morning."

[2] Montgomery also claims that when he returned home he found the side and front doors of his house unlocked and open.

(per curiam) (unpublished opinion). He also filed suit in federal court, claiming that Huntington Bank and Silver Shadow violated various provisions of the FDCPA. The Defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, arguing that Montgomery was not a "consumer" within the meaning of the statute. Also, the Defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that neither Huntington Bank nor Silver Shadow met the statutory definition of a "debt collector" under the FDCPA. The district court granted the motions by dismissing the complaint as to each of the Defendants. In later ruling on Montgomery's motion for relief from judgment, the court determined that due to "Plaintiff's failure to make a claim upon which relief can be granted, to show that he is party in interest in this suit or that Defendants are 'debt collectors' under the Consumer Credit Protection Act, the disposition of the case will not change in anyway [sic] upon rehearing or reconsideration."

## II. STANDING

As an initial matter, both Huntington Bank and Silver Shadow contend that Montgomery lacks standing to pursue this litigation because he is not a "consumer" as defined by the FDCPA. As the Defendants see it, it was Smith, not Montgomery, who entered into the personal loan agreement with Huntington Bank for the purchase of the BMW, and, thus, it is Smith who is the real party in interest. Although the Defendants' assertion is correct for one of Montgomery's claims, the Defendants' standing analysis--more precisely its lack thereof--erroneously collapses the entire standing inquiry under the FDCPA into whether a particular plaintiff is a "consumer," completely ignoring that other sections of the FDCPA are either expressly available, or have been interpreted to be available, to "any person" aggrieved under the relevant statutory provision.

Montgomery brought suit under three separate provisions of the FDCPA: 15 U.S.C. §§ 1692c, 1692d and 1692e. Of these three sections, relief is limited to "consumers" only under § 1692c. As we have previously explained, "only a 'consumer' has standing to sue for violations under 15 U.S.C. § 1692c." *Wright v. Fin. Serv. of Norwalk, Inc.*, 22 F.3d 647, 649 n.1 (6th Cir. 1994) (*en banc*). However, § 1692c "appears to be the most restrictive of the FDCPA's provisions. The other provisions are not limited to 'consumers,' and thus are broader than § 1692c." *Id.* (citation omitted).

By its express terms, § 1692d provides that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse *any person* in connection with the collection of a debt." (Emphasis added). We have interpreted this to mean that "any person who has been harmed by a proscribed debt collection practice under § 1692d . . . [may] sue for damages under § 1692k(a)(2)(A)." *Wright*, 22 F.3d at 649 n.1 (paraphrasing the court's holding in *Whatley v. Universal Collection Bureau, Inc.*, 525 F. Supp. 1204 (N.D. Ga. 1981)). Likewise, § 1692e states that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. When read in conjunction with § 1692k(a),[3] this means that "*any aggrieved party* may bring an action under § 1692e." *Wright*, 22 F.3d at 649-50 (emphasis added). Accordingly, the Defendants are mistaken to suggest that Montgomery lacks standing to pursue his claims under §§ 1692d and 1692e. However, the Defendants are correct

---

[3]Section 1692k(a) governs who may enforce the provisions of the FDCPA. It provides that "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person . . . ." 15 U.S.C. § 1692k(a). This enforcement provision "is couched in the broadest possible language." *Wright*, 22 F.3d at 649 (internal quotation marks and citation omitted).

that he lacks standing under § 1692c, as he is not a consumer for purposes of the FDCPA.

Under the FDCPA, a "consumer" is defined as "any natural person obligated or allegedly obligated to pay any debt," 15 U.S.C. § 1692a(3), or "the consumer's spouse, parent (if the consumer is a minor), guardian, executor, or administrator." 15 U.S.C. § 1692c(d). *See also Wright*, 22 F.3d at 649 n.1. In the instant case, Montgomery has admitted in his complaint that the personal loan agreement authorized Huntington Bank to "[t]ak[e] possession of the collateral (BMW) . . . [held] in the name of Helen J. Smith" in the event of breach. His complaint further states that at the time of the repossession, the BMW was "owned by Helen Smith" and merely "borrowed" by him. Nowhere in his complaint does he allege that he is the legal guardian of his mother or that he is otherwise obligated or allegedly obligated to pay any debt in connection with the purchase of the BMW. Also, contrary to his suggestion, the mere fact that he possessed or borrowed his mother's car, and that the Defendants were aware of this possible arrangement and communicated this information to one another, does not show that he was responsible or allegedly responsible for paying any debt stemming from the purchase of the automobile.[4] Accordingly, he fails to meet the statutory definition of "consumer," and, hence, lacks standing under § 1692c.

### III. STANDARD OF REVIEW

This court reviews *de novo* a district court's grant of a motion to dismiss under Federal Rule of Civil Procedure

---

[4]According to Montgomery, he was "allegedly obligated to a pay a debt" because Huntington Bank faxed a letter to Silver Shadow indicating that "the unit [i.e., the car] was possibly in the possession of a person known to the bank as Duane Montgomery" and provided his address. Such awareness or exchange between the Defendants, however, says nothing as to whether Montgomery has, or allegedly has, a legal obligation to pay a debt in connection with the car.

12(b)(6). *Merriweather v. City of Memphis*, 107 F.3d 396, 398 (6th Cir. 1997). In reviewing a motion to dismiss, we must "construe the complaint in the light most favorable to the plaintiff . . . and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998) (citation omitted). In the process of applying this standard, we must be cautious to remember that a *pro se* complaint must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). That said, we "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

## IV. ANALYSIS

As a matter of law, liability under §§ 1692d and 1692e can only attach to those who meet the statutory definition of a "debt collector." The Defendants assert that they are not debt collectors within the meaning of the FDCPA. Thus, as a threshold matter, we must determine whether either of the Defendants falls within the FDCPA's definition of a "debt collector."

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The statute defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be

owed or due another."[5] 15 U.S.C. § 1692a(6). Creditors who use names other than their own--such as a third-party name-- to collect on their own debts also qualify as debt collectors under the Act. *See id.* Exempted from the definition of a debt collector, however, is

> any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (ii) concerns a debt which was originated by such person . . . [or] (iii) concerns a debt which was not in default at the time it was obtained by such person.

15 U.S.C. § 1692a(6)(F)(ii), (iii). Finally, a "creditor" is "any person who offers or extends credit creating a debt or to whom a debt is owed . . . ." 15 U.S.C. § 1692a(4). As the Fifth Circuit has concluded, "[t]he legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors . . . ." *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (internal quotation marks and citation omitted); *see also Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106 (6th Cir. 1996) (quoting *Perry* with approval for this proposition).

Based on the foregoing, it is clear that under the circumstances of this case, Huntington Bank is not a "debt collector" subject to liability under the FDCPA. First, Huntington Bank falls within the exemption contained in § 1692a(6)(F)(ii) because by retaining Silver Shadow to repossess the BMW that served as collateral for the car loan to Smith, it was collecting or attempting to collect on a debt that was owed, due, or asserted to be owed or due, and that

---

[5]A debt is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

originated with it.  *See, e.g.*, *Thompson v. Bank One*, 137 F. Supp. 2d 721, 724 (E.D. La. 2001) (finding that "[i]n collecting on its own debts [through use of a third party or a subsidiary agent], [the] Bank . . . does not meet the criteria of a 'debt collector' pursuant to [§ 1692a(6)(F) of] the FDCPA"); *Zsamba v. Cmty. Bank*, 63 F. Supp. 2d 1294, 1300 (D. Kan. 1999) (finding that a creditor bank collecting on its own debt falls outside the purview of the FDCPA by virtue of § 1692a(6)(F)(ii)); *Vitale v. First Fidelity Leasing Group*, 35 F. Supp. 2d 78, 81 (D. Conn.) (holding that "[a]lthough there are allegations to suggest that [the automobile leasing and financing company] was collecting a debt, the debt was one owed to it and thus its activities are not covered by the FDCPA"), *aff'd*, 166 F.3d 1202 (2d Cir. 1998) (unpublished opinion).  In other words, Huntington Bank was an actual, original, consumer creditor of Montgomery's mother collecting its account, and, as such, was exempted from the statutory definition of a "debt collector."  To this, the federal courts are in agreement: A bank that is "a creditor is not a debt collector for the purposes of the FDCPA and creditors are not subject to the FDCPA when collecting their accounts." *Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 794 (W.D. Ky. 2003) (citations omitted); *see, e.g.*, *Russell v. Standard Fed. Bank*, 2000 WL 1923513, at *2 (E.D. Mich. 2000); *James v. Ford Motor Credit Co.*, 842 F. Supp. 1202, 1206-07 (D. Minn. 1994), *aff'd*, 47 F.3d 961 (8th Cir. 1995); *Meads v. Citicorp Credit Serv., Inc.*, 686 F. Supp. 330, 333 (S.D. Ga. 1988).

Furthermore, Huntington Bank also does not qualify as a debt collector because it falls within the provision of § 1692a(6)(F)(iii), a "person collecting or attempting to collect any debt owed or due . . . to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person."  Under Montgomery's version of the facts, at the time Huntington Bank extended a personal loan to Smith to purchase a car, and thus acquired a "debt," the personal loan was not "in default."  In fact, the alleged default in this case did not occur until over a year after Smith

entered into the loan agreement with Huntington Bank.  Therefore, Huntington Bank is not a "debt collector" pursuant to § 1692a(6)(F)(iii).  *See Wadlington*, 76 F.3d at 107 (finding that a corporation that obtained debts before they were in default did not fall within the definition of a debt collector).  Accordingly, the district court was correct in dismissing the FDCPA claims against Huntington Bank.

As a repossession agency, Silver Shadow, likewise, does not fall within the definition of a "debt collector."  Montgomery suggests that we give meaning to the term debt collector as it applies to Silver Shadow by looking at Michigan statutory law.  State law, however, cannot be our reference point.  Rather, to give proper meaning to a federal statute we must be guided by the plain meaning of the statute, canons of statutory construction, relevant legislative history, and other indicia that shed light on the statute's meaning, such as judicial precedent and administrative agency interpretations, which for purposes of the FDCPA, are interpretations given by the Federal Trade Commission ("FTC").  *See Jordan v. Kent Recovery Serv., Inc.*, 731 F. Supp. 652, 656 (D. Del. 1990).  In *Jordan*, the court undertook a comprehensive analysis to determine whether those who enforce security interests, such as repossession agencies, fall outside the ambit of the FDCPA.  It held that "an enforcer of a security interest, such as a repossession agency, falls outside the ambit of the FDCPA for all purposes, except for the purposes of § 1692f(6)."[6]  *Id.* at 659; *see also*

---

[6]Section 1692a(6) states that "[f]or the purpose of section 1692f(6) of this title, [the term debt collector] also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests."  Section 1692f(6) itself prohibits the following conduct:

> Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if--
> (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;
> (B) there is no present intention to take possession of the

*Seibel v. Society Lease, Inc.*, 969 F. Supp. 713, 716-17 (M.D. Fla. 1997) (concluding that except for purposes of § 1692f(6), a defendant in the business of repossessing vehicles does not fall within the FDCPA's definition of debt collector). We agree.

In *Jordan*, the court found that although Congress included within the definition of "debt collectors" those who enforce security interests, it limited this definition only to the provisions of § 1692f(6). As the court put it, "[s]uch a purposeful inclusion for one section of the FDCPA implies that the term 'debt collector' does not include an enforcer of a security interest for any other section of the FDCPA." *Id.* at 657. The court further indicated that when § 1692f(6) is read in conjunction with its legislative history, the two provide "the key to understanding the reason Congress drew a distinction between a debt collector and an enforcer of a security interest." *Id.*

It went on to find that the FDCPA was enacted in order "to prevent the 'suffering and anguish' which occur when a debt collector attempts to collect money which the debtor, through no fault of his own, does not have." *Id.* at 658 (citation omitted). In contrast, the court found that the evil sought to be prevented by proscribing the conduct of debt collectors, namely, "harassing attempts to collect money which the debtor does not have due to misfortune," is not implicated in the situation of a repossession agency that enforces a "present right" to a security interest because in the latter context, "an enforcer of a security interest with a 'present right' to a piece of secured property attempts to retrieve something which another person possesses but which the holder of the security interest still owns." *Id.* It noted that "[u]nlike the debtor who

_____

property; or
(C) the property is exempt by law from such dispossession or disablement.

15 U.S.C. § 1692f(6).

lacks the money sought, the possessor of secured property still has control of the property. Any failure to return the property to the rightful owner occurs not through misfortune but through a deliberate decision by the present possessor to avoid returning the property." *Id.* It was thus the court's view that "the legislative history confirms that Congress intended an enforcer of a security interest, such as a repossession agency, to fall outside the ambit of the FDCPA for all purposes except for the prohibitions described in § 1692f(6)."[7] *Id.* (citation omitted). In sum, we likewise conclude that except for purposes of § 1692f(6), an enforcer of a security interest, such as a repossession agency, does not meet the statutory definition of a debt collector under the FDCPA.

In the case at bar, Montgomery has not alleged any violation of § 1692f(6).[8] Also, other than conclusorily stating that Silver Shadow is a "debt collector," he has not alleged that Silver Shadow is a business whose "principal purpose" is debt collection, or that it regularly collects or attempts to collect debts owed to another. His allegations reveal only that Silver Shadow was seeking recovery of the BMW that was posted as collateral for the personal loan given to Smith by Huntington Bank. In fact, Montgomery admits that Silver

_____

[7]The court also found helpful an FTC commentary that provided that Because the FDCPA's definition of "debt collection" includes parties whose principal business is enforcing security interests only for . . . [§ 1692f(6) ] purposes, such parties (if they do not otherwise fall within the definition) are subject only to this provision and not to the rest of the FDCPA.

*Jordan*, 731 F. Supp. at 658 (quoting Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50108 (1988) (published December 13, 1998)).

[8]We leave for another day the question of whether Montgomery's allegations may have stated a claim under § 15 U.S.C. § 1692f(6). *See, e.g., Purkett v. Key Bank USA, N.A.*, 2001 WL 503050, at *2-*3 (N.D. Ill. 2001) (unreported).

Shadow was simply acting as a repossession agency when it seized his mother's BMW.  As such, Silver Shadow does not qualify as a debt collector under §§ 1692d and § 1692e, the only two claims remaining.  Accordingly, the district court did not err in dismissing the complaint against Silver Shadow pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[9]

**AFFIRMED.**

---

[9]On appeal, Montgomery recites numerous Michigan laws that he claims the Defendants violated in connection with the repossession of his mother's car.  These alleged state law violations were not ruled on by the district court, nor were they even set forth in the complaint.  Accordingly, they are not properly before this court on appeal.  *See United States v. Harris*, 9 F.3d 493, 499 (6th Cir.1993) ("As a general rule, we will not consider issues not presented to and considered by the district court.") (citation omitted).

Also, he briefly suggests that the district court erred in denying his motion for relief from judgment or for reconsideration because he did not receive notice regarding the court's hearing on the Defendants' motion to dismiss.  The district court considered Montgomery's request and concluded that he failed to show "a palpable defect by which the Court was misled or that if another hearing is granted, the disposition of the case will change in any way."  The motion for relief from judgment or for reconsideration was essentially a motion pursuant to Federal Rule of Civil Procedure 60(b).  A district court's denial of a Rule 60(b) motion is reviewed for an abuse of discretion.  *Browder v. Director, Dept. of Corrections*, 434 U.S. 257, 263 n.7 (1978).  Here, Montgomery lacks standing with regard to his § 1692c claim, and the Defendants do not meet the statutory definition of debt collectors with regard to his §§ 1692d and 1692e claims.  Accordingly, as a matter of law, a new hearing would not have changed the disposition of the case. The district court, therefore, did not abuse its discretion in denying the motion for rehearing or reconsideration.