Heather ZSAMBA, an individual, and a Minor by her next friend Frank and Dean Ann Zsamba, Plaintiff,

v.

**COMMUNITY BANK, ABILENE, KANSAS, Defendant.**

No. Civ.A. 98–4221–DES.

United States District Court, D. Kansas.

Aug. 5, 1999.

Brenda J. Bell, Seaton, Miller & Bell, L.L.P., Manhattan, KS, Frank Zsamba, Abilene, KS, plaintiff pro se.

Brenda J. Bell, Seaton, Miller & Bell, L.L.P., Manhattan KS, Dean Ann Zsamba, Abilene, KS, plaintiff pro se.

Ann L. Hoover, Clutter, Hinkel & Aadalen, LLP, Topeka, KS, Timothy H. Girard, Grant M. Glenn, R. Patrick Riordan, Woner, Glenn, Reeder & Girard, Topeka, KS, for Community Bank, Abilene, Kansas, defendant.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter comes before the court on defendant's Motion for Judgment on the Pleadings (Doc.33). For the reasons set forth below, the defendant's motion is granted.

## I. BACKGROUND

Plaintiff's parents obtained a loan from Community Bank of Abilene, Kansas (hereinafter "the Bank"), on August 10, 1994, for approximately $2500 and pledged Spy Guy, the horse at issue in this case, as collateral for that loan. The loan proceeds were to be used for expenses related to their business, Zig Zag Stables. At the time that plaintiff's parents obtained the loan, they signed a security agreement which contained a future advance clause and gave the Bank a security interest in the horse. The security agreement also contained a clause which stated that plaintiff's parents were representing to the Bank that they had good and marketable title to the collateral.

On October 27, 1994, plaintiff's parents paid off the original loan and obtained a second loan to enable them to purchase a truck for their business. This second loan stated that it was secured by the original security agreement signed in August of 1994, as well as a second security agreement executed the same day as the loan, which granted the bank a security interest in the truck. The parties dispute whether plaintiff's father later requested that the horse be released as collateral because it belonged to plaintiff.

On January 2, 1998, plaintiff's parents filed for bankruptcy in Wichita under chapter 13. In the pleadings filed with the bankruptcy court, her parents claimed the horse as their property; thus, ownership of the horse apparently was not in dispute at that time. Furthermore, plaintiff's parents indicated in their bankruptcy pleadings that they were not holding property for anyone else. Plaintiff's parents also did not dispute their ownership of the horse at the hearing held before the bankruptcy court. In fact, her father indicated during the bankruptcy hearing that the horse was only worth 60 cents on the pound for slaughter value, or approximately $1,000.

The Wichita division of the bankruptcy court granted the Bank relief from the automatic stay provision on July 22, 1998, allowing the Bank to proceed against plaintiff's parents in state court to recover the horse. The Bank then filed suit in the Dickinson County District Court, seeking an *in rem* judgment regarding the horse, and filed a motion for immediate delivery of the horse, which was set for hearing on September 1, 1998. The Wichita bankruptcy court dismissed the bankruptcy proceeding on August 26, 1998. Although the court did not invoke the 180-day bar to re-filing for bankruptcy, the bankruptcy court did grant prospective stay relief to the Bank for any future bankruptcies that plaintiff's parents might file.

On August 31, 1998, plaintiff's parents filed a second chapter 13 bankruptcy petition in Topeka. On September 1, 1998, the Dickinson County District Court held a hearing on the Bank's motion to take immediate delivery of the horse. Neither one of plaintiff's parents appeared, even though they were served notice of the hearing. Therefore, the court granted the motion, and the Bank posted a bond as required by Kansas statute, based upon the value of the horse as stated by plaintiff's father at the Wichita bankruptcy hearing. The Dickinson County Sheriff's Department executed the court's order and delivered the horse to the party who has been boarding the horse for the Bank. The horse was inspected by a veterinarian and was insured for $10,000.

After the Bank learned of the second bankruptcy petition, the Bank filed a motion to enforce the Wichita bankruptcy court's order granting the Bank prospective stay relief. At the same time, plaintiff's parents filed a motion to have the horse returned to them based upon the theory that the horse belonged in their bankruptcy estate and stating that the horse was necessary for their reorganization. However, in the Topeka bankruptcy pleadings, plaintiff's parents listed the horse as having no value and subject to an ownership dispute with their daughter. The Topeka bankruptcy court denied the motion filed by plaintiff's parents and allowed the Bank to proceed with the state court action.

Plaintiff's parents subsequently filed a motion with the Topeka bankruptcy court seeking to redeem the horse and take possession. This motion was also denied. The second bankruptcy petition was dismissed on November 6, 1998, in response to a motion by the bankruptcy trustee. In the order of dismissal, the bankruptcy court prohibited plaintiff's parents from re-filing a bankruptcy petition for 180 days.

On September 3, 1998, plaintiff sent the Bank a letter in which she claimed ownership of the horse. The Bank states that this was the first notice it received of plaintiff's alleged interest in the horse. On September 16, 1998, the Bank amended its state court petition to foreclose its security interests in both the truck and the horse. The Bank then filed a motion for immediate delivery of the truck. The hearing on this motion was set for September 28, 1998.

Plaintiff's father appeared with counsel at the hearing, at which time the court granted the motion. Plaintiff's father voluntarily surrendered the truck the follow-

ing day. However, plaintiff's parents failed to file a timely answer to the Bank's state court petition. On October 13, 1998, four days after the time to file an answer had expired, the same counsel who appeared at the hearing filed a motion seeking leave to file a late answer; however, neither the motion nor the proposed answer alleged that plaintiff had an interest in the horse.

The Bank objected to the motion to file the answer late and filed a motion for default judgment. The Dickinson County District Court entered default judgment against plaintiff's parents on November 23, 1998. The journal entry stated that the Bank had to sell the truck first, and then the Bank could sell the horse if the sale of the truck did not satisfy the debt. The time in which to appeal this order expired on December 28, 1998. Plaintiff's parents did not appeal the entry of default judgment.

On December 22, 1998, the bank sold the truck at a private sale. Plaintiff's parents subsequently objected to the commercial reasonableness of the truck sale, at which time plaintiff's parents specifically stated that the underlying indebtedness to the Bank did not fall within the scope of the Uniform Consumer Credit Code. The Dickinson County District Court conducted a hearing on the objections and found that the sale was commercially reasonable. Thus, the only remaining issues before the state court are the sale of the horse and attorney fees. Plaintiff's attorney made a limited appearance at the hearing on the objections to the sale of the truck and informed the state court that she wanted to receive notice of any sale of the horse.

Plaintiff filed this action under her own name on December 14, 1998, with a federal claim pursuant to the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. § 1692 *et seq.*, and state law claims for conversion and wrongful garnishment. Plaintiff's complaint requested $20,000 in damages, as well as attorney fees, costs, and punitive damages. Plaintiff then filed an Application for Injunction Pursuant to F.R.C.P. 65 (Doc.8) on February 12, 1999.

On March 2, 1999, this court issued a Memorandum and Order giving plaintiff twenty days to amend her complaint to bring suit through her next friend or a guardian ad litem, pursuant to Fed. R.Civ.P. 17(c). In that same order, the court declined to exercise supplemental jurisdiction over plaintiff's state law claims. Thus, the only claim left in this case is plaintiff's FDCPA claim. Plaintiff filed her amended complaint on March 19, 1999. On June 14, 1999, the court issued an order denying plaintiff's motion for a preliminary injunction. Plaintiff's father filed a notice of appeal on July 9, 1999.

## II. STANDARD FOR JUDGMENT ON THE PLEADINGS

Rule 12(c) of the Federal Rules of Civil Procedure states that

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Generally, a "motion for judgment on the pleadings under Fed.R.Civ.P. 12(c) is treated as a motion to dismiss under Fed. R.Civ.P. 12(b)(6)." *Mock v. T.G. & Y. Stores Co.,* 971 F.2d 522, 528 (10th Cir. 1992). However, as Rule 12(c) states, if matters outside the pleadings are presented to and not excluded by the court, then the motion shall be treated as a motion for summary judgment. Because defendant admits that its motion presents matters outside the pleadings, defendant asserts that the motion should be treated as a summary judgment motion. The court notes that plaintiff has not objected to the

application of the summary judgment standard to the pending motion. Therefore, the court will treat the motion for judgment on the pleadings as a summary judgment motion.

A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The rule provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *Id.* at 248, 106 S.Ct. 2505. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos Nat'l Lab.,* 992 F.2d 1033, 1036 (10th Cir. 1993). The movant may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant need not negate the nonmovant's claim. *Id.* at 323, 106 S.Ct. 2548.

Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmovant must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file,

designate specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (interpreting Fed. R.Civ.P. 56(e)). Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Id.* at 322, 106 S.Ct. 2548. Such a complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Id.* at 323, 106 S.Ct. 2548.

A court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *See, e.g., United States v. O'Block,* 788 F.2d 1433, 1435 (10th Cir.1986) (stating that "[t]he court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues") The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Id.* at 250, 106 S.Ct. 2505.

## III. DISCUSSION

■ Initially, the court notes that plaintiff's father has filed a notice of appeal. Although the notice of appeal does not specify which order is being appealed, the court presumes that plaintiff seeks to appeal the court's order denying a preliminary injunction. The court recognizes that the filing of a notice of appeal "is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Stewart v. Donges,* 915 F.2d 572, 575. (10th Cir.1990) (citation omitted). However, "an interlocutory injunction appeal under [28 U.S.C.] § 1292(a)(1) does

not defeat the power of the trial court to proceed further with the case." 16 CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3921.2, at 53 (2d ed.1996). Therefore, the court finds that it has maintained jurisdiction over all aspects of this case, except those involving the denial of the preliminary injunction.

The defendant argues that the debt at issue is not consumer debt and that plaintiff has failed to allege in her amended complaint that this case involves a consumer debt. Therefore, defendant asserts that the FDCPA is not applicable, and plaintiff's claim is insufficient. Defendant further argues that the Bank is not a debt collector, as defined by the FDCPA. As a result, defendant again asserts that the FDCPA is inapplicable to this case and its motion for judgment on the pleadings should be granted.

In her two-page response, plaintiff asserts that it is irrelevant that she was not the borrower and that, as to her, the debt was a consumer debt. Plaintiff further responds with a conclusory statement that the Bank is a debt collector, merely quoting the definition contained in 15 U.S.C. § 1692a(6).

The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5) (emphasis added). The Supreme Court has recognized that this definition limits the application of the FDCPA to consumer debt. *Heintz v. Jenkins,* 514 U.S. 291, 293, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995).

Plaintiff has cited two cases which support her position that the FDCPA does not require that plaintiff is the party which actually incurred the debt. *See Beattie v. D.M. Collections, Inc.,* 754 F.Supp. 383 (D.Del.1991); *Dutton v. Wolhar,* 809 F.Supp. 1130 (D.Del.1992). However, the court notes that the underlying debt in each of these cases was consumer debt, and the plaintiffs in these cases actually received phone calls or letters which attempted to hold them responsible for the debt of another person.

■ In this case, the court must agree that plaintiff has failed to allege in her amended complaint that the debt at issue is consumer debt, as defined by the FDCPA. In addition, the court concludes that the underlying debt in this case is commercial in nature. All of the loan documents signed by plaintiff's parents indicate that the loan proceeds were to be used for business expenses and for a truck, which was purchased on behalf of the business. Furthermore, plaintiff's parents specifically recognized that this was commercial debt in the state court proceedings by seeking relief available to commercial debtors. Plaintiff has not cited any case law to support her argument that, as to her, this was consumer debt. The court cannot conclude that the nature of the debt changes simply because the plaintiff did not personally incur the debt.

■ With regard to defendant's argument that the Bank is not a debt collector, the FDCPA defines a "debt collector" as

**any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.** Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes' any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.... **The term does not include—**

.        .        .        .        .

(F) **any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity** (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) **concerns a debt which was originated by such person;** (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

15 U.S.C. § 1692a(6) (emphasis added). Furthermore, "[t]he legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors." *Perry v. Stewart Title Co.,* 756 F.2d 1197, 1208 (5th Cir.1985) (citing S.Rep. No. 95–382, 95th Cong., 1st Sess. 3, reprinted in 1977 U.S.Code Cong. & Ad.News 1695, 1698). *See also Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 107 (6th Cir.1996) (finding that defendant who accepted assignment of debt before it was in default was plaintiff's creditor, rather than a debt collector); *Krutchkoff v. Fleet Bank, N.A.,* 960 F.Supp. 541, 548 (D.Conn.1996) (finding that 15 U.S.C. § 1692a(6)(F)(ii) explicitly excludes "any person collecting a debt which was originated by such person" and that the FDCPA cannot be applied to creditors); *Teng v. Metro. Retail Recovery, Inc.,* 851 F.Supp. 61, 66 (E.D.N.Y. 1994) (finding that " 'debt collectors' are those who regularly collect debts for others and not creditors of consumers"); *James v. Ford Motor Credit Co.,* 842 F.Supp. 1202, 1206–07 (D.Minn.1994) ("Automobile finance companies which make loans to automobile purchasers do not have as their principal purpose the collection of debts and they do not generally collect debts due to others. . . . As a general rule 'actual creditors . . . are not subject to the act' ").

In this case, the Bank is clearly a creditor of plaintiff's parents. While plaintiff emphasizes the portion of the definition of a debt collector which states "in any business," this interpretation would require the court to ignore the plain language of the statute which states in relevant part "in any business **the principal purpose of which is the collection of any debts.**" 15 U.S.C. § 1692a(6) (emphasis added). Clearly, the principal purpose of the Bank is not the collection of debt. Rather, the Bank's principal purpose is lending money. Plaintiff's interpretation also ignores § 1692a(6)(F)(ii) which provides that the term "debt collector" does not include "any person collecting or attempting to collect any debt owed . . . to the extent such activity . . . concerns a debt which was originated by such person." Plaintiff's argument also ignores the numerous cases which have held that creditors are not subject to the FDCPA. The statute itself, and the case law interpreting it, clearly does not support the broad definition of "debt collector" proposed by plaintiff.

■ Furthermore, nothing has been presented to the court which indicates that the Bank had any communication with plaintiff in which the Bank sought to convince plaintiff to pay her parents' debt. While it appears to be plaintiff's contention that the Bank is attempting to force plaintiff to pay her parents' debt by taking possession of her horse and trying to sell it, the court notes that her parents had pledged the horse as collateral on their loans and represented to the Bank that they had good title to the horse. Furthermore, plaintiff or her parents could have informed the state court of the ownership dispute prior to the entry of default judgment. In effect, plaintiff is attempting to use this FDCPA claim as a collateral attack on the state court order giving the Bank possession of the horse and the right to sell the horse to satisfy the debt. The court does not believe that this was the intended purpose of the FDCPA.

Therefore, for all the reasons stated above, the court concludes that the underlying debt in this case is not consumer debt. Furthermore, the court finds that the Bank is not a debt collector, as defined by the FDCPA. As a result, the court concludes that the FDCPA is inapplicable to the circumstances of plaintiff's case, and the defendant's motion should be granted.

**IT IS THEREFORE BY THE COURT ORDERED** that defendant's Motion for Judgment on the Pleadings (Doc.33) is granted.