RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0159p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

ANARION INVESTMENTS LLC,

*Plaintiff-Appellant*,

*v.*

CARRINGTON MORTGAGE SERVICES, LLC; BROCK & SCOTT, PLLC; CHRISTIANA TRUST,

*Defendants-Appellees*.

Nos. 14-5781/5993

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:14-cv-00012—Aleta Arthur Trauger, District Judge.

Argued: March 11, 2015

Decided and Filed: July 23, 2015

Before: KETHLEDGE and DONALD, Circuit Judges; McCALLA, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Scott D. Johannessen, LAW OFFICES OF SCOTT D. JOHANNESSEN, Nashville, Tennessee, for Appellant. Nicholas H. Adler, BROCK & SCOTT, PLLC, Franklin, Tennessee, for Appellees. **ON BRIEF:** Scott D. Johannessen, LAW OFFICES OF SCOTT D. JOHANNESSEN, Nashville, Tennessee, for Appellant. Nicholas H. Adler, BROCK & SCOTT, PLLC, Franklin, Tennessee, for Appellees.

KETHLEDGE, J., delivered the opinion of the court in which McCALLA, D.J., joined. DONALD, J. (pp. 5–10), delivered a separate dissenting opinion.

_____

[*]The Honorable Jon Phipps McCalla, Senior United States District Judge for the Western District of Tennessee, sitting by designation.

1

_____

**OPINION**

_____

KETHLEDGE, Circuit Judge.  This appeal concerns the meaning of the word "person" as used in the Fair Debt Collection Practices Act (FDCPA or Act), 15 U.S.C. § 1692 et seq. Anarion Investments is a Delaware limited liability company owned and controlled by the attorney representing it in this appeal, Scott Johannessen.  Anarion sued the defendants under the Act, alleging they made false representations pursuant to the foreclosure sale of a home on which Anarion held an option to buy.  The district court dismissed the suit on the pleadings, holding that Anarion is not a "person" under the Act.  We respectfully disagree and reverse.

We take the facts alleged in Anarion's complaint as true.  *See Glazer v. Chase Home Finance LLC*, 704 F.3d 453, 457 (6th Cir. 2013).  In 2008, Bank of America loaned Kirk Leipzig $960,000, secured by a deed of trust on the residence (located in Brentwood, Tennessee) that he bought with the money.  Leipzig then assigned his rights in the residence to the Leipzig Living Trust, which in turn leased it to Johannessen in 2010.  The lease has a five-year term and includes an option to buy.  Johannessen exercised that option in 2011, but otherwise did not act to obtain title to the property then.  Around that time, Leipzig stopped making payments on the bank loan.  In January 2013, Johannessen assigned his lease and option rights to Anarion.  By then the residence was in foreclosure.

In a handful of foreclosure notices in a local newspaper, Carrington stated that Brock & Scott was a "substitute trustee" for purposes of the bank loan "by an instrument duly recorded." Anarion alleges there was no such "instrument."  That putative "misrepresentation" then gave rise to this suit, which the district court dismissed under Fed. R. Civ. P. 12(b)(6).  We review the dismissal de novo.  *Glazer*, 704 F.3d at 457.

The FDCPA's enforcement provision, 15 U.S.C. § 1692k, states that "any debt collector who fails to comply with any provision of this subchapter *with respect to any person* is liable to such person[.]"  15 U.S.C. § 1692k(a) (emphasis added).  The sole issue before us is whether Anarion is a "person" under this provision and the Act generally.

The presumptive answer to that question is yes.  The federal Dictionary Act provides that, "[i]n determining the meaning of any Act of Congress," the word "person" includes artificial entities—like Anarion—unless "the context indicates otherwise[.]"  1 U.S.C. § 1.  Here there is plenty of relevant context, since "person" appears 24 times in the FDCPA.  In some places, the term refers exclusively to artificial entities.  Section 1692a(6)(B), for example, refers to "any person" who acts "as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control."  15 U.S.C. § 1692a(6)(B).  Natural persons are not related or affiliated in those ways.  Likewise, § 1692c bars debt collectors from communicating with "any person other than," among others, "a consumer reporting agency[.]"   15 U.S.C. § 1692c(b).  Consumer-reporting agencies are not natural persons.  In other places, "person" includes artificial entities and indeed as a practical matter refers primarily to them.  Section 1692*l*, for example, authorizes the Federal Trade Commission "to enforce compliance by any person with this subchapter[.]"  Section 1692j provides that "any person" who uses a deceptive form "shall be liable" for doing so.  Section 1692n provides that the Act does not exempt "any person" from complying with state laws "with respect to debt collection practices[.]"  Section 1692a(4) defines "creditor" as "any person" who offers credit.  And § 1694a(6) defines "debt collector" as "any person" who collects debts.  15 U.S.C. § 1692a(4), (6).  We routinely apply the latter two provisions to corporations.  *See, e.g.*, *Currier v. First Resolution Investment Corp.*, 762 F.3d 529, 533 (6th Cir. 2014); *Montgomery v. Huntington Bank*, 346 F.3d 693, 699 (6th Cir. 2003).  The other provisions are not the subject of much litigation.

The defendants respond that in some places the term "person" refers unambiguously to natural persons.  For example, § 1692d(1) bars debt collectors from harassing "any person" by means of, among other things, "[t]he use or threat of use of violence or other criminal means to harm the *physical person*, reputation, or property of any person."  (Emphasis added.)  Similarly, § 1692e(4) bars debt collectors from representing or implying that "nonpayment of any debt will result in the *arrest or imprisonment* of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful[.]"  (Emphasis added.)  Corporations have no physical person to harm, and cannot be arrested or imprisoned, so those references themselves apply only to natural persons.  But corporations do have "reputation[s]" and "property," which means that "any person" as used in these provisions includes artificial

entities. Neither of these provisions, therefore, provides support for the assertion that "any person" as used in the Act means only natural persons.

Instead the contrary is implied by one of the Act's core provisions, § 1692a(3), which defines "consumer" to mean "any natural person obligated or allegedly obligated to pay any debt." That formulation strongly suggests that, when Congress meant to refer only to natural persons, it did so expressly. Moreover, if the term "any person" is already limited to natural persons, then the word "natural" as used in § 1692a would be meaningless. We strive not to read statutes that way. *See Ford Motor Co. v. United States*, 768 F.3d 580, 587 (6th Cir. 2014). In summary, the usual rule from the Dictionary Act applies here: the term "person" as used in the FDCPA includes both artificial entities and natural persons alike.

The defendants' remaining argument is that extending the FDCPA's protections to entities like Anarion—an investment company, of all things—would outpace the statute's purpose. Even taking that argument on its own terms, however, two aspects of the FDCPA alleviate that concern. First, the definition of debt in § 1692a prevents any person—natural or artificial—from filing a lawsuit over an attempt to collect a debt owed by a business. 15 U.S.C. § 1692a(5). Normally, therefore, businesses will not have any basis to bring an FDCPA claim. (This case is unusual because Anarion brought suit based on an attempt to collect Leipzig's personal debt.) Second, nothing in our decision today means that Anarion can bring suit under the FDCPA. The district court's opinion answered only one question, and thus so does ours: whether Anarion is a "person" under the Act. Left unanswered, among other questions, is the question whether any of the defendants' representations were made "with respect to" Anarion, as required for relief under § 1692k(a) of the Act.

The district court's judgment is reversed, and the case remanded for proceedings consistent with this opinion. Anarion's separate appeal in No. 14-5781 is dismissed as moot.

---

**DISSENT**

---

BERNICE BOUIE DONALD, Circuit Judge, dissenting.  The main issue at the district court—and the one that determines the fate of Anarion's claims on appeal—is whether Anarion, as a limited liability company, has standing to sue as a protected "person" under the FDCPA. After thorough consideration, the district court determined that Anarion does not.  Because I agree that legal entities do not qualify as protected persons entitled to remedy under the FDCPA, I respectfully dissent.

It is true that the Dictionary Act establishes a presumption that, unless Congress indicates otherwise, the word "person" refers to individuals and legal entities alike when used in legislative text.  *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2768 (2014); 1 U.S.C. § 1.  Because the FDCPA does not contain an explicit definition limiting the meaning of "person" to "natural persons," Anarion argues that the Dictionary Act presumption entitles it to protection under the FDCPA.  This is the rationale the majority adopts, and were it applied in another context to a different statute, I agree that our inquiry would properly end there.

However, several factors suggest that Congress did "indicate otherwise," *i.e.*, that the word "person" is best thought of as a natural person when referring to plaintiffs under the FDCPA.  First, the Supreme Court has made clear that congressional history properly guides our application of the Dictionary Act to interpret a term otherwise undefined in a statutory text. *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Counsel*, 506 U.S. 194, 198-201 (1993) (observing relevant congressional history lacked any indication Congress contemplated the term "person"  to include legal entities with regards to 28 U.S.C. § 1915).  We must therefore view § 1692k's use of the word "person" in light of the FDCPA's stated purpose and history.  Second, as the majority emphasizes, the keystone of statutory interpretation is the language of the statute itself.  *POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228, 2236 (2014).  Here, the language favors an interpretation of "person" in 1692k as "natural person" and not a legal entity. Finally, the majority's conclusion and judgment run contrary to existing jurisprudence regarding the Dictionary Act and the FDCPA.

When Congress passed the FDCPA in 1977, it did so out of concern that existing laws did not adequately protect consumers from aggressive third-party debt collectors. 15 U.S.C. § 1692(b). The Act, it explained, was necessary to promote more consistent state action to shield consumers from personal ruin.[1] *Id.* § 1692(e). Specifically, Congress intended the law to combat "abusive debt collection practices" because such practices lead to "personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." *Id.* § 1692(a). Thus, the FDCPA reflects in its opening lines an intent to protect natural persons, not legal entities. It protects not against all bankruptcies, but personal ones, and aims to prevent marital instability, job loss, and invasions of individual privacy—all maladies unique to natural persons and inapplicable to legal entities. As noted by the district court, this interpretation of the FDCPA's goals is supported by a contemporaneous Senate Report that discusses the impact of abusive debt collection practices on individuals. *See* S. Rep. No. 95-382, at 2 (1977). The report specifies that the law was intended to apply "only to debts contracted by consumers for personal, family, or household purposes; [not] to the collection of commercial accounts," and goes on to discuss several examples of abusive collection practices that primarily impact natural persons.[2] *Id.* at 3. Thus, the stated purpose of the law and its supporting documentation clearly indicate that the FDCPA is designed to protect individual consumers, not legal entities.

The language of the Act reflects this congressional purpose, particularly in light of the three main actors involved in a consumer debt collection scenario: a creditor, a debt collector employed by that creditor, and a debtor. The majority compares uses of the word "person" across these categories as an indication Congress intended to include legal entities in all three postures. However, the Act is most consistent when one considers debtors to be natural persons facing creditors and debt collectors of all stripes—from individuals to banks and other companies. This reading is reflected throughout the statutory text, including those sections cited by Anarion and the majority.

---

[1] Of note, the FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3).

[2] "Collection abuse takes many forms, including obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process." S. Rep. No. 95-382, at 2.

The enforcement provision of the FDCPA makes liable "any debt collector who fails to comply with any provision of [the statute] with respect to any person[.]"  15 U.S.C. § 1692k. The term "person" is not expressly defined within the FDCPA, so the majority rightfully looks to the Dictionary Act's mandate that, "unless the context indicates otherwise . . . the word[] 'person' . . . include[s] corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals[.]"  1. U.S.C. § 1.  But the Supreme Court has explained that the classic instance in which "context indicates otherwise" under the Dictionary Act is one "where Congress provides no particular definition, but the definition in 1 U.S.C. § 1 seems not to fit." *Rowland*, 506 U.S. at 200.

In *Rowland*, an association of prison inmates sought to proceed *in forma pauperis* under 28 U.S.C. § 1915(a) in a lawsuit against the prison.  *Id*. at 196.  The statutory text of § 1915(a) provides that a court may authorize court proceedings without prepayment by a "person" who is unable to pay the fees.  28 U.S.C. § 1915(a).  The question in *Rowland* was whether the definition of a "person" under § 1915(a) included legal entities, like the association, or whether it was limited to natural persons.  The Supreme Court held that Congress had intended the benefits of § 1915 to apply only to natural persons, and declined to extend *in-forma-pauperis* status to the association.  *Rowland*, 506 U.S. at 196.  The fact that the statute contained no explicit definition limiting "persons" to natural persons was not dispositive:  "The Dictionary Act's very reference to contextual 'indication' bespeaks something more than an express contrary definition[.] . . . A contrary 'indication' may raise a specter short of inanity, and with something less than syllogistic force." *Id*. at 200-01.

Nor did the *Rowling* Court require a broad interpretation of the term "person" where that interpretation was feasible under some of the law's provisions.  The Court instead analyzed the terms in the context of § 1915's key provisions, where use of the word "person" suggests a congressional intent to limit the statute's benefits to natural persons.  *See id*. at 201-09.  This analysis does not address every *possible* definition that could be afforded the word "person" under § 1915, but rather that which seems most likely given the background of related law and the natural consequences of interpreting "person" to include legal entities.  *Id.*

In this context, Congress began by clearly identifying the group it intends to benefit from the FDCPA. Several of the FDCPA's provisions indicate it is designed to protect against harm to natural persons, whether that harm is caused by natural persons or legal entities. With that in mind, we must look beyond the default definition of "person" to the broader aim of the statute. Indeed, even in an instance where the default definition prevailed, we held application of the Dictionary Act was appropriate not merely because it "comport[ed] with our common understanding," but because it also "le[d] to a result that [wa]s *consistent with the purpose of the FDCPA*." *Gillie v. Law Office of Eric A. Jones, LLC*, 785 F.3d 1091, 1098 (6th Cir. 2015) (emphasis added).

There are several instances within the FDCPA in which interpreting "person" to include legal entities "seems not to fit." *Rowland*, 506 U.S. at 200. Beginning with the specific provision in question, § 1692k, we find that its four uses of the word "person" universally refer to a debtor entitled to protection under the FDCPA. *See* 15 U.S.C. § 1692k(a), (a)(1), and (b)(2). Anyone in another posture, *i.e.*, that of a creditor or debt collector, is referred to by some other term. *Id.* In another closely related provision, the FDCPA prohibits harassment or abuse by stating that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." *Id.* § 1692d. The section goes on to prohibit "[t]he use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person." *Id.* § 1692d(1). Section 1692e prohibits false or misleading representations, including those that suggest "nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful[.]" *Id.* § 1692e(4).

The majority acknowledges that these provisions contain "references [that] apply only to natural persons," but then goes on to insist we must include legal entities as plaintiffs because, for example, "corporations do have 'reputation[s]' and 'property[.]'" Maj. Op. at 3 (second alteration in original). From this, the majority concludes that "[n]either of these provisions . . . provides support for the assertion that 'any person' as used in the Act means only natural persons." *Id.* at 4. However, that a handful of provisions could expansively apply to both

natural persons *and* legal entities is not, under *Rowland*, a reason to contradict the law's overall aim. *See Rowland*, 506 U.S. at 208 ("Thus, recognizing the possibility of an organizational *in forma pauperis* status even in the supposedly 'extreme' case of the [association] would force us to delve into the difficult issues of policy and administration without any guidance from § 1915."). The majority's analysis might apply as regards the provisions it highlights, but its analysis *also* supports a more context-appropriate interpretation: that the FDCPA aims to protect natural persons from debtors and debt collectors of all kinds—individuals and corporations.

The existing jurisprudence surrounding the FDCPA echoes this more nuanced interpretation. Despite the thousands of claims that have been brought in federal court since the passage of the FDCPA in 1977, neither the majority nor the parties cite a single instance in which a legal entity has sued as a "person" entitled to relief under the Act. Anarion attempts to combat this stark reality by citing our opinions in *Wright v. Financial Service of Norwalk, Inc.*, 22 F.3d 647, 649 (6th Cir. 1994) (en banc), and *Montgomery v. Huntington Bank*, 346 F.3d 693, 697 (6th Cir. 2003), for the proposition that reference to "any person" in the FDCPA is "couched in the broadest possible language." *Wright*, 22 F.3d at 649 (quoting *Riviera v. MAB Collections, Inc.*, 682 F. Supp. 174, 175 (W.D.N.Y. 1988)) (internal quotation marks omitted). However, those cases both addressed a question of which *natural persons*—direct consumers and/or parties related to them—had standing to sue under the FDCPA, not whether *non-natural persons* had the same rights.

The majority, for its part, dispatches the issue by explaining that "[n]othing in our decision today means that Anarion can bring suit under the FDCPA," because several other requirements must be met to state a claim under the Act. Maj. Op. at 4. However, this seems a cavalier response to a very real concern. That Anarion may not have stated a claim does not mean that another legal entity will not follow with a more viable claim—now enabled by an unprecedented holding that legal entities are "persons" deserving of protection under a statute designed to protect individuals from harassing phone calls or threats of violence. This holding potentially opens the door to a new class of plaintiffs under the FDCPA and effectively provides a new cause of action in foreclosure appeals. Were that my sole ground for concern, I might

decide differently.  As written, however, the majority's holding runs counter to the FDCPA's purpose, language, and history.  Accordingly, I respectfully dissent.